IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW MEXICO
_____

ERIN LOMELI,

        Plaintiff,

v.                                                       No. CIV 01-443 BB/WWD

CITY OF ALBUQUERQUE; CITY OF
ALBUQUERQUE POLICE OFFICER B.
McCUTCHEON, in his individual capacity;
CITY OF ALBUQUERQUE POLICE
OFFICER J. FEATHER, in his individual
capacity; CITY OF ALBUQUERQUE
POLICE SERGEANT J. SALAZAR, in his
individual capacity,

        Defendants.

## MEMORANDUM OPINION
## AND
## ORDER ON SUMMARY JUDGMENT MOTIONS

**THIS MATTER** is before the Court on Defendants' motion for summary judgment on Counts I, II, and III [doc. #29], and Plaintiff's cross-motion for summary judgment on Count II [doc. #38]. This Court having reviewed the briefs and evidence submitted by counsel,[1] finds the Defendants' motion on Counts I and II and Plaintiff's cross-motion should be Denied. Defendants' motion on Count III will be reserved until after the trial on Counts I and II.

---

[1] The Court did not consider Plaintiff's Ex. 9 as it is irrelevant to any matter decided. Defendants' motion to strike Ex. 9 [doc. #47] is therefore moot.

## *Discussion*

### *Undisputed facts*

Erin Lomeli and her future husband, Gerardo Lomeli, drove from Las Cruces to Albuquerque to go to a concert at the Launch Pad Club on March 24, 1998. During the concert, Plaintiff consumed two large beers and recalls leaving the Club around midnight.

At approximately 2:35 AM, Sergeant Jacob Salazar of the Albuquerque Police Department saw Plaintiff driving westbound on Central without headlights.[2] Sergeant Salazar signaled for Plaintiff to pull over. Plaintiff pulled over into a nearby parking lot. Sergeant Salazar asked for her driver's license, registration, and proof of insurance. Plaintiff did not have a driver's license, registration or proof of insurance in her possession. Plaintiff told Sergeant Salazar that her driver's license and insurance card had been stolen from her vehicle while she and Mr. Lomeli were at the Launch Pad. The officer ran a check on her driver's license and license plate and discovered a suspended Colorado driver's license and no valid New Mexico driver's license. He also discovered that the license plate on the vehicle was a "skip" meaning that it was not registered to any vehicle. Sergeant Salazar called a tow truck to the scene.

Plaintiff was informed that unless she signed the citations issued by Sergeant Salazar, she would be taken to jail. She refused to sign the citations at least twice, and

---

[2] Plaintiff admits to this infraction of the motor vehicle code.

**Officer Joseph Feather, who had arrived to assist, placed her in handcuffs. Plaintiff was upset and angry, but agreed to sign the citations and was released. Her vehicle was towed and she became very upset. Officer Brian McCutcheon and Officer-in-training Eileen Cain were also on scene. Officer Cain assisted Plaintiff in making a burglary report. The other officers laughed while Officer Cain interviewed Plaintiff about the purported auto burglary.**

**At one point, Plaintiff started to walk away from the scene; however, she came back and "requested" that the officers give her a ride. She was denied this request and rude exchanges followed. Officer McCutcheon then made a comment to Plaintiff to the effect that "at least we're not the ones walking." In response, Plaintiff stepped towards Officer McCutcheon and spit. Plaintiff attempted to run away from the officers after she spit, but Officer McCutcheon took Plaintiff to the ground and placed her in handcuffs and under arrest.**

### *Standard of Review*

**Plaintiff has the threshold burden of demonstrating the constitutional right alleged to have been infringed was clearly established, but summary judgment is not appropriate for defendant if plaintiff can present a version of the facts under which defendant would not be entitled to qualified immunity.** *Medina v. Cram*, **252 F.3d 1124, 1128 (10th Cir. 2001);** *Albright v. Rodriquez*, **51 F.3d 1531, 1535 (10th Cir. 1995);** *Barichello v. McDonald*, **98 F.3d 948 (7th Cir. 1996). Once the plaintiff satisfies this test,**

then the *traditional* burden of the movant is reinstated. *See Nelson v. McMullen*, 207 F.3d 1202, 1206 (10th Cir. 2000). At this point the Court is required "'examine the factual record and reasonable inferences therefrom in the light most favorable to the party opposing summary judgment.'" *Sigmon v. CommunityCare HMO, Inc.*, 234 F.3d 1121, 1124-25 (10th Cir. 2000), quoting *Kaul v. Stephan*, 83 F.3d 1208, 1212 (10th Cir. 1996).

## *Qualified Immunity*

### *Defendant McCutcheon*

Defendants expend substantial ink on the legality of Plaintiff's stop and arrest. Plaintiff has dropped her wrongful arrest claim, so this argument is irrelevant except as background. Defendants argue Plaintiff's illegal acts as both a basis for arrest and justification for Officer McCutcheon's physical take-down of Plaintiff. The problem at this stage of the proceeding is, of course, that the facts surrounding the spitting incident and take-down are the subject of conflicting evidence. Defendants claim Plaintiff spit on them; she says she was approximately ten feet away and merely spat on the ground as a gesture of anger and disgust at their taunting. (Pl's Resp. p. 7.) The Court may not grant a summary judgment when material facts are in dispute. *Frohmader v. Wayne*, 958 F.2d 1024 (10th Cir. 1992).

Defendants argue, quoting *Saucier v. Katz*, 533 U.S. 194 (2001), "that the right to make an arrest or investigatory stop necessarily carries with it the right to use some

4

degree of physical coercion or threat thereof to effect it." (Defs' Memo in Support p. 13.) The issue, of course, is whether the force used was "excessive." And the inquiry into the reasonableness of the force used "is an objective one and heavily fact dependent." *Wilson v. Meeks*, 52 F.3d 1547, 1553 (10th Cir. 1995). Plaintiff alleges Defendant tackled her, yanked her arms back with his knee in her back, and cuffed her. Though she alleges she did not resist, Defendant McCutcheon then "grab[ed] her by her ponytail and pulls her hair, lets all his weight [alleged to be 225-245 pounds] rest on her, and grinds her face into the asphalt." (Pl's Resp. p. 13.) By citing deposition and affidavit evidence supporting this version of the material facts, Plaintiff has defeated Defendant McCutcheon's summary judgment. *See Alexander v. County of Los Angeles*, 64 F.3d 1315 (9th Cir. 1995).

*Defendant Feather*

Defendants argue that Officers Feather and Salazar cannot be liable as 42 U.S.C. § 1983 cannot derive from *respondent superior*. This misperceives the allegations against Defendant Feather who Plaintiff alleges grabbed her "by the hand, turned her and moved her up against her car, and twisted and wrenched her arm up towards her shoulder blades behind her back (she describes it as 'pulling' on her arm so hard he was almost lifting her off the ground)." (Pl's Resp. p. 10.) While Defendant Feather denies he used excessive force, the testimony referenced by Plaintiff supports her version and raises questions of material fact. *Alexander, supra.*

### *Defendant Salazar*

There are no allegations Defendant Salazar touched Plaintiff, and Defendant again advances the *respondent superior* argument. The claims against Salazar are, however, not based on the fact that he was a Sergeant and thus "the highest ranking officer at the scene," but on the claim he stood and watched as Defendants Feather and McCutcheon used excessive force on Plaintiff. Once again, Plaintiff has advanced evidence which, if believed by the fact finder, could support a verdict for Plaintiff. *Mick v. Brewer*, 76 F.3d 1127, 1136 (10th Cir. 1996); *Schwab v. Wood*, 767 F. Supp. 574 (D. Del. 1991).

### *Plaintiff's Cross-Motion*

Plaintiff has, in her Response, cross-moved for summary judgment on Count II (use of excessive force). (Pl's Resp. p. 1.) Unfortunately, Plaintiff's arguments are intertwined with the factual allegations opposing Defendants' motion for summary judgment.[3] The same evidence advanced by Defendants in support of their motion for summary judgment makes the issue of excessive force a question of material fact. Material facts as to excessive force are not to be resolved by summary judgment. *Alexander, supra; Janicsko v. Pellman*, 774 F. Supp. 331 (M.D. Pa. 1991).

### *Municipal Liability*

---

[3] Toward the end of her argument, Plaintiff's counsel does state, "Even taking defendants at their word for purposes of Plaintiff's cross-motion, the force used was at a minimum excessive, and Plaintiff is entitled to summary judgment on liability as to Defendant McCutcheon's use of excessive force." (Pl's Resp. p. 28.)

**Defendants have moved to sever the trial against the City from those against the individual Defendants. As stated in the companion opinion, the Court finds the motion is well taken since municipal liability must derive from a finding of individual liability. A ruling on Defendants' motion for summary judgment will therefore be reserved until after the outcome of the trial of liability claims against the individual Defendants.**

**O R D E R**

**For the above stated reasons, Defendants Motion for Summary Judgment on Counts I and II, and Plaintiff's Cross-Motion on Count II, will be DENIED.**

**Dated at Albuquerque this 18th day of September, 2002.**

_____
**BRUCE D. BLACK
United States District Judge**

**For Plaintiff:**
   Carolyn M. Nichols, Shannon L. Oliver, NICHOLS & OLIVER, Albuquerque, NM

**For Defendants:**
   Stephanie M. Griffin, Assistant City Attorney, CITY OF ALBUQUERQUE, Albuquerque, NM